Slip Op. 07-140

## UNITED STATES COURT OF INTERNATIONAL TRADE

```
————————————————————————————
                                    :
CORUS STAAL BV,                     :
                                    :
          Plaintiff,                :
                                    :
     v.                             :
                                    :   Before: Judith M. Barzilay, Judge
UNITED STATES,                      :   Court No. 07-00270
                                    :
          Defendant,                :
                                    :
     and                            :
                                    :
UNITED STATES                       :
STEEL CORPORATION, et al.,          :
                                    :
          Defendant-Intervenors.    :
                                    :
————————————————————————————:
```

## OPINION

[Plaintiff's application for preliminary injunction is denied.]

*Steptoe & Johnson, LLP*, (*Joel D. Kaufman*), *Alice A. Kippel*, *Jamie B. Beaber*, and *Richard O. Cunningham* for Plaintiff Corus Staal BV.

*Peter D. Keisler*, Assistant Attorney General; *Jeanne E. Davidson*, Director; (*Claudia Burke*), Commercial Litigation Branch, Civil Division, United States Department of Justice for Defendant United States.

*Skadden Arps Slate Meagher & Flom, LLP*, *John J. Mangan*, (*Jeffrey D. Gerrish*), and *Robert E. Lighthizer* for Defendant-Intervenor United States Steel Corporation.

*Wiley Rein, LLP*, (*Timothy C. Brightbill*) and *Alan H. Price* for Defendant-Intervenor Nucor Corporation.

*Stewart and Stewart*, (*William A. Fennell*) and *Terence P. Stewart* for Defendant-Intervenor Mittal Steel USA, Inc.

Dated: September 19, 2007

**BARZILAY, Judge:**  Plaintiff Corus Staal BV ("Corus"), moved this court for a

preliminary injunction to enjoin the Defendant[1] United States (the "Government") from

liquidating certain entries of hot-rolled carbon steel flat products from the Netherlands

("HRCS") that are subject to antidumping duties.  *See Antidumping Duty Order: Certain Hot-*

*Rolled Carbon Steel Flat Products from the Netherlands*, 66 Fed. Reg. 59,565 (Dep't Commerce

Nov. 29, 2001) ("*AD Order*").  Corus has participated in several proceedings before the Court

contesting the Government's use of "zeroing" to calculate dumping margins.  *See Corus Staal*

*BV v. United States*, 29 CIT __, 387 F. Supp. 2d 1291 (2005) ("*Corus Staal I*"), *aff'd*, 186 F.

App'x 997 (Fed. Cir. 2006), *cert. denied*, 127 S. Ct. 3001 (2007); *see also Corus Staal BV v.*

*United States*, 31 CIT __ , 493 F. Supp. 2d 1276 (2007) ("*Corus Staal 5AR*"); *Corus Staal BV v.*

*United States*, Slip Op. 06-112, 2006 WL 2056401 (July 25, 2006) (not reported in F. Supp.);

*Corus Staal BV v. U.S. Dep't of Commerce*, 27 CIT 388, 259 F. Supp. 2d 1253 (2003).  This

opinion follows this court's decision from the bench on August 1, 2007, denying Plaintiff's

application for a preliminary injunction.  Despite clear statutory guidelines to the contrary, Corus

contends that the Department of Commerce ("Commerce") may not impose antidumping duties

on its imports unless there is a valid determination of dumping pursuant to 19 U.S.C. § 1673.

The Government moved to dismiss this action under USCIT Rules 12(b)(1) and 12(b)(5).

Whether Corus satisfies the criterion for a preliminary injunction was thoroughly

---

[1] Nucor Corporation ("Nucor"), United States Steel Corporation ("U.S. Steel"), and
Mittal Steel USA, Inc. ("Mittal Steel") join as Defendant-Intervenors.

discussed in a previous opinion issued by another judge of this Court.[2]  *See Corus Staal 5AR*, 31

CIT at __, 493 F. Supp. 2d at 1281.  As that case was dismissed on jurisdictional grounds, the

four-part preliminary injunction analysis included in the opinion is *dicta*.  *See id*. at 1288.  The

facts of this case, however, are legally distinguishable from *Corus Staal 5AR*, and the court finds

that jurisdiction here is proper under 28 U.S.C. § 1581(i).  Although the factual distinctions

mentioned above provide grounds for jurisdiction, they do not affect the merits of Corus's claim.

In other words, Corus cannot meet the criteria for a preliminary injunction in this case for the

same reasons outlined in *Corus Staal 5AR*.

## I. Background

On November 29, 2001, Commerce issued an antidumping order on HRCS after applying

a methodology called "zeroing"[3] to determine whether the subject entries were sold at less than

fair value.  *See AD Order*, 66 Fed. Reg. 59,565 (Dep't Commerce Nov. 29, 2001); *Notice of*

*Amended Final Determination of Sales at Less Than Fair Value; Certain Hot-Rolled Carbon*

*Steel Flat Products from the Netherlands*, 66 Fed. Reg. 55,637 (Dep't Commerce Nov. 2, 2001).

Corus, a Dutch producer of HRCS; challenged the use of "zeroing" during the first

administrative review.  *See Initiation of Antidumping and Countervailing Duty Administrative*

---

[2] The case was brought pursuant to the fifth administrative review and challenged
Commerce's liquidation instructions under 28 U.S.C. § 1581(i).

[3] "Commerce used a methodology called 'zeroing' . . . whereby only positive dumping
margins (i.e., margins for sales of merchandise sold at dumped prices) were aggregated, and
negative margins (i.e., margins for sales of merchandise sold at nondumped prices) were given a
value of zero."  *Corus Staal BV v. U.S. Dep't of Commerce*, 395 F.3d 1343, 1345-46 (Fed. Cir.
2005).

*Reviews*, 67 Fed. Reg. 78,772 (Dep't Commerce Dec. 26, 2002); *see also Certain Hot-Rolled*

*Carbon Steel Flat Products from the Netherlands; Preliminary Results of Antidumping Duty*

*Administrative Review*, 68 Fed. Reg. 68,341 (Dep't Commerce Dec. 8, 2003).  In the final

results, Commerce reaffirmed the use of "zeroing" and imposed an adjusted weighted-average

dumping margin on the subject entries.  *See Certain Hot-Rolled Carbon Products from the*

*Netherlands; Final Results of Antidumping Duty Administrative Review*, 69 Fed. Reg. 33,630

(Dep't Commerce June 16, 2004) ("*Final Results*").

      Corus sought review of the *Final Results* in this Court pursuant to 28 U.S.C. § 1581(c).

*See Corus Staal I*, 29 CIT at __, 387 F. Supp. 2d at 1292-93.  Before issuing its judgment, the

court entered an injunction that prohibited Customs from liquidating the subject entries during

the pendency of the litigation.  Ultimately, the court upheld the *Final Results*.  *See id*. at __, 387

F. Supp. 2d at 1297-1301, 1305.  On appeal, the Federal Circuit affirmed in a per curiam

opinion, whereupon Corus submitted a petition for rehearing en banc, which was denied.  *See*

*Corus Staal BV*, 186 Fed. App'x 997.  The Supreme Court denied certiorari.  *See Corus Staal*,

127 S. Ct. 3001.  Consequently, the injunction expired, and Commerce instructed Customs to

liquidate Corus's entries pursuant to the *Final Results* on July 6, 2007.  *See* 19 U.S.C. 1516a(c)

& (e).  In response, Corus moved this court for a temporary restraining order ("TRO") to

"maintain the *status quo* pending a hearing on preliminary injunctive relief."  Pl. Br. 3.  The

court granted the TRO until July 30, 2007, which was subsequently extended through August 1,

2007, the date of the preliminary injunction hearing.

While Corus was disputing its claims in our domestic courts, the European Communities

("EC") initiated a proceeding before the World Trade Organization ("WTO"), challenging the

United States' practice of "zeroing" to calculate dumping margins.[4]  *See* Request for

Consultations by the European Communities, *United States - Laws, Regulations and*

*Methodology for Calculating Dumping Margins ("Zeroing")*, WT/DS294/1 (June 19, 2003)

(*"Request for Consultations by EC"*).  The WTO panel concluded that Commerce's use of

"zeroing" violated U.S. obligations under the WTO Antidumping Agreement ("*AD Agreement*")

with respect to antidumping investigations.[5]  *See* Panel Report, *United States – Laws,*

_____

[4] The EC challenged the use of "zeroing" in 15 antidumping investigations and 16
administrative reviews.  The investigation of Corus was among those challenged before the
WTO Panel.  *See Request for Consultations by EC*, WT/DS294/1, at 2.  However, none of the
administrative reviews of HRCS were included in the proceeding.  According to Defendants,
since Section 129 proceedings apply only to specific administrative actions, such as a particular
administrative review, the Section 129 determination at issue in this case has no effect on the
subject entries.  The court rejects this argument because the Section 129 proceeding revoked the
*AD Order* without exception.  *See Implementation of the Findings of the WTO Panel in*
*US--Zeroing (EC): Notice of Determinations Under Section 129 of the Uruguay Round*
*Agreements Act and Revocations and Partial Revocations of Certain Antidumping Duty Orders*,
72 Fed. Reg. 25,261, 25,262 (Dep't of Commerce May 4, 2007) ("*Section 129 Determination*").

[5]

[U]nlike in a new investigation, in an administrative review [Commerce] does not
compare the average US price (export price) to the average home market price
(normal value) for the whole investigation period.  Instead, [Commerce's]
practice is to compare the US net price for each individual US transaction to the
most contemporaneous monthly average normal value.  The total value of the
dumping margin is then calculated by aggregating only the transaction-specific
positive dumped values and then multiplying the quantity sold in the US market
for each model by the unit dumped value to arrive at the total dollars dumped.
Comparisons of individual US transactions to weighted-average monthly normal
value that yield negative margins are ignored (effectively treated as zero). . . .
[Commerce's] methodology of aggregating the values of only the positive
dumping margins based on the individual transactions means that there is no
offset against the positive values at any stage.

*Regulations and Methodology for Calculating Dumping Margins ("Zeroing")*, ¶¶ 8.2, 8.4,

WT/DS294/R (Oct. 31, 2005) ("*Panel Report*").  The United States appealed certain aspects of

the *Panel Report*, but the determination concerning "zeroing" remained intact.  *See* Appellate

Body Report, *United States – Laws, Regulations and Methodology for Calculating Dumping*

*Margins*, ¶ 263,  WT/DS294/AB/R (Apr. 18, 2006) ("*Appellate Body Report*").  Moreover, the

Appellate Body held that the use of "zeroing" was also impermissible during administrative

reviews.  *See id.* ¶¶ 132-35, 2263(a)(i).

Accordingly, the United States started the process of implementing the decision outlined

in the *Panel Report*.  *See Implementation of the Findings of the WTO Panel in US Zeroing (EC):*

*Notice of Initiation of Proceedings Under Section 129 of the URAA; Opportunity to Request*

*Administrative Protective Orders; and Proposed Timetable and Procedures*, 72 Fed. Reg. 9306

(Dep't Commerce Mar. 1, 2007).  The administrative procedures for implementing such a

decision are contained in Sections 123 and 129 of the Uruguay Round Agreements Act

("URAA"), codified in 19 U.S.C. §§ 3533(g)[6] and 3538,[7] respectively.[8]  *See also* 19 U.S.C.

---

*Request for Consultations by EC*, WT/DS294/1, at 5.

[6] Section 3533(g)(1) reads:

(g) Requirements for agency action
    (1) Changes in agency regulations or practice
    In any case in which a dispute settlement panel or the Appellate Body
    finds in its report that a regulation or practice of a department or agency of
    the United States is inconsistent with any of the Uruguay Round
    Agreements, that regulation or practice may not be amended, rescinded, or
    otherwise modified in the implementation of such report unless and until--
        (A) the appropriate congressional committees have been consulted
        under subsection (f) of this section;
        (B) the Trade Representative has sought advice regarding the

----

       modification from relevant private sector advisory committees established under section 2155 of this title;

       (C) the head of the relevant department or agency has provided an opportunity for public comment by publishing in the Federal Register the proposed modification and the explanation for the modification;

       (D) the Trade Representative has submitted to the appropriate congressional committees a report describing the proposed modification, the reasons for the modification, and a summary of the advice obtained under subparagraph (B) with respect to the modification;

       (E) the Trade Representative and the head of the relevant department or agency have consulted with the appropriate congressional committees on the proposed contents of the final rule or other modification; and

       (F) the final rule or other modification has been published in the Federal Register.

§ 3533(g)(1).

[7] In relevant part, § 3538 provides:

(a) . . . .

(6) Revocation of order

If, by virtue of the Commission's determination . . . , an antidumping or countervailing duty order with respect to some or all of the imports that are subject to the action of the Commission . . . is no longer supported by an affirmative Commission determination under title VII of the Tariff Act of 1930 . . . or this subsection, the Trade Representative may, after consulting with the congressional committees . . . , direct the administering authority to revoke the antidumping or countervailing duty order in whole or in part.

(b) . . . .

(4) Implementation of determination

The Trade Representative may, after consulting with the administering authority and the congressional committees . . . , direct the administering authority to implement, in whole or in part, the determination . . . .

(c) . . . .

(1) Effects of determinations

Determinations concerning title VII of the Tariff Act of 1930 . . . that are implemented under this section shall apply with respect to unliquidated entries of the subject merchandise . . . that are entered, or withdrawn from warehouse, for consumption on or after--

§ 3511 (implementing URAA).  In the Section 123 proceeding, Commerce eliminated the

practice of "zeroing" in "'all current and future antidumping investigations'" as of February 22,

2007.[9]  *Corus Staal 5AR*, 31 CIT at __, 493 F. Supp. 2d at 1280 (quoting *Antidumping*

*Proceedings: Calculation of the Weighted-Average Dumping Margin During an Antidumping*

*Investigation; Final Modification*, 71 Fed. Reg. 77,722 (Dep't Commerce Dec. 27, 2006)

("*Section 123 Determination*")).  In addition, Commerce commenced Section 129 proceedings to

"recalculate the dumping margins in each . . . antidumping investigation[] . . . without zeroing."

---

> (A) in the case of a determination by the Commission . . ., the date on which the Trade Representative directs the administering authority . . . to revoke an order pursuant to that determination. . . .

§ 3538.

[8]

> Congress has established two procedures by which a negative WTO decision may be implemented into domestic law.  The first method, a Section 123 proceeding, is the mechanism to amend, rescind, or modify an agency regulation or practice in order to implement a decision by the WTO that such is inconsistent with U.S. treaty obligations.  Section 123 requires the United States Trade Representative ("USTR") to consult with appropriate congressional committees, private sector committees, and provide for public comment before determining whether and how to change an agency regulation or practice. . . . The second method, a Section 129 proceeding, is discrete.  Section 129 sets forth a procedure to implement a negative WTO decision with respect to a *specific* administrative determination that was the subject of a WTO dispute.  Importantly, a Section 129 determination is prospective in nature: it becomes effective only for unliquidated entries of merchandise that are entered or withdrawn from warehouse for consumption on or after the date the USTR directs Commerce to implement that determination.

*Corus Staal 5AR*, 31 CIT at __ n.2, 493 F. Supp. 2d at 1280 n.2 (citations omitted).

[9] The effective date of the Section 123 Determination was changed from January 16, 2007 to February 22, 2007.  *See Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margins in Antidumping Investigations; Change in Effective Date of Final Modification*, 72 Fed. Reg. 3783 (Dep't Commerce Jan. 26, 2007); *Section 123 Determination*, 71 Fed. Reg. at 77,725.

*Id.* After performing this recalculation, Commerce adjusted Corus's dumping margin to zero and revoked the *AD Order*. *See Section 129 Determination*, 72 Fed. Reg. at 25,262. The effective date of the *Section 129 Determination* was April 23, 2007. *Id.*

During this period, Commerce also initiated the fifth administrative review of the *AD Order* at the request of three domestic steel companies.[10] *See Initiation of Antidumping and Countervailing Duty Administrative Reviews*, 71 Fed. Reg. 77,720 (Dep't Commerce Dec. 27, 2006). However, the domestic producers decided to rescind their request for an administrative review, *see Certain Hot-Rolled Carbon Steel Flat Products from the Netherlands: Notice of Rescission of Antidumping Duty Administrative Review*, 72 Fed. Reg. 15,105, 15,106 (Dep't Commerce Mar. 30, 2007), which prompted Commerce to issue liquidation instructions on Corus's entries.[11] *See* 19 C.F.R. § 351.212(c). At the time Commerce issued these particular instructions, the *Section 129 Determination* was not in effect. *See Corus Staal 5AR*, 31 CIT at __, 493 F. Supp. 2d at 1281; *see also Section 129 Determination*, 72 Fed. Reg. at 25,261. Corus objected to the recision of the fifth administrative review and argued that Commerce was precluded from issuing liquidation instructions that imposed antidumping duties since the *Section 123 Determination* prohibited the use of "zeroing" in dumping investigations. Commerce rejected this argument. Corus then sought judicial review in this Court pursuant to § 1581(i), claiming that Commerce's liquidation instructions to Customs were unlawful. *See Corus Staal 5AR*, 31 CIT at __, 493 F. Supp. 2d at 1284; *cf. Shinyei Corp. v. United States*, 355

---

[10] The three domestic participants included Nucor, U.S. Steel, and Mittal Steel.

[11] To clarify, the entries at issue in the fifth administrative review were made between November 1, 2005 and October 31, 2006, and are distinct from those at issue in this case.

F.3d 1297, 1304 (Fed. Cir. 2004); *Consol. Bearings Co. v. United States*, 348 F.3d 997, 1001

(Fed. Cir. 2003).  That case was dismissed for lack of jurisdiction.  *See Corus Staal 5AR*, 31 CIT

at __, 493 F. Supp. 2d at 1288.  In the case at bar, Corus has essentially raised the same claim

under § 1581(i) for entries made during the first administrative review, with the crucial

exception that here the *Section 129 Determination* went into effect before Commerce issued its

liquidation instructions.  Compl. ¶¶ 1, 2, 4, 5.  On August 1, 2007, this court denied Corus's

application for a preliminary injunction.

## II. Discussion

*A. Subject Matter Jurisdiction*

 Jurisdiction is proper in this case because revocation of the *AD Order* as implemented

through the *Section 129 Determination* had occurred at the time Commerce instructed Customs

to liquidate the subject entries on July 6, 2007.  This distinction provides a basis for jurisdiction

under § 1581(i).[12]

 "Congress provided this Court with broad residual jurisdiction under 28 U.S.C. § 1581(i)

to hear 'any civil action commenced against the United States . . . that arises out of any law of

the United States providing for . . . tariffs [or] duties . . . on the importation of merchandise for

---

[12] Defendant-Intervenor U.S. Steel contends that Corus is barred from raising the present claim under the doctrine of *res judicata* because it raised the same claim, after revocation of the *AD Order*, during its petition for certiorari.  Def.-Int. Br. 10 n.2; *see* Petition for Writ of Certiorari at *6-9, *Corus Staal BV v. United States*, No. 06-1057, 2007 WL 275951 (Jan. 25, 2007); Reply Brief of Petitioner at *4-7, *Corus Staal BV v. United States*, No. 06-1057, 2007 WL 1655119 (June 8, 2007).  However, the doctrine of *res judicata* does not apply in this situation because the "denial of a writ of certiorari imports no expression of opinion upon the merits of the case."  *Atl. Coast Line R.R. Co. v. Powe*, 283 U.S. 401, 403-04 (1931); *see Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003) (requiring final judgment on merits to preclude later adjudication of same claim).

reasons other than the raising of revenue,' as well as cases challenging Commerce's

'administration and enforcement with respect to the matters referred to' in the remainder of

§ 1581." *Parkdale Int'l., Ltd. v. United States*, Slip Op. 07-122, 2007 WL 2261379 (CIT Aug. 8,

2007) (not reported in F. Supp.) (quoting § 1581(i)(2), (4)) (brackets & ellipses in original); *see*

*Am. Signature, Inc. v. United States*, 31 CIT __, __, 477 F. Supp. 2d 1281, 1287 (2007).

"Section 1581(i) jurisdiction may not be invoked when jurisdiction under another subsection of

§ 1581 is or could have been available, unless the remedy provided under that other subsection

would be manifestly inadequate." *Miller & Co. v. United States*, 824 F.2d 961, 963 (Fed. Cir.

1987). It was "enacted to avoid conflict in jurisdiction with the district courts and to ensure

judicial review for various unspecified challenges to enforcement of import laws." *Associacao*

*Dos Industriais de Cordoaria E Redes v. United States*, 17 CIT 754, 757, 828 F. Supp. 978, 982-

83 (1993). The "'mere recitation of a basis for jurisdiction, by either a party or a court, cannot

be controlling . . . we look to the true nature of the action in the district court in determining

jurisdiction . . . .'" *Norsk Hydro Can., Inc. v. United States*, 472 F.3d 1347, 1355 (Fed. Cir.

2006) (quoting *Williams v. Sec'y of Navy*, 787 F.2d 552, 557 (Fed. Cir. 1986) (ellipses in

original).

        As Corus already exhausted all avenues to jurisdiction under § 1581(c) by challenging

the results of the first administrative review, *see Corus Staal I*, 29 CIT at __, 387 F. Supp. 2d at

1295, the only possible basis for Corus to obtain jurisdiction is pursuant to § 1581(i). *Cf. Am.*

*Signature, Inc.*, 31 CIT at __, 477 F. Supp. 2d at 1287-89. Corus cites § 1581(i)(2) and (4) as

providing jurisdiction in this case "on the grounds that the authority necessary for imposition of

antidumping duties under 19 U.S.C. []§ 1673, . . . namely, the existence of a valid final

determination of dumping, did not exist at the time of issuance of the challenged liquidation

instructions and does not now exist." Pl. Br. 5. As previously mentioned, the *Section 129*

*Determination* became binding on April 23, 2007. Corus filed this action on July 19, 2007.

Since the *Section 129 Determination* revoked the *AD Order*, there no longer exists a valid

determination of dumping with respect to HRCS. Therefore, after April 23, 2007, Corus

contends that Commerce lost authority under 19 U.S.C. §§ 1673 and 1673d(c)[13] to impose

antidumping duties on the subject HRCS.[14] Pl. Reply Br. 4-6.

---

[13] In relevant part, §§ 1673 and 1673d(c) provide:
If--
. . . .
(2) the Commission determines that--
      (A) an industry in the United States--
          (i) is materially injured . . .
. . . .
      by reason of imports of that merchandise or by reason of sales (or the
      likelihood of sales) of that merchandise for importation,

then there shall be imposed upon such merchandise an antidumping duty, in
addition to any other duty imposed, in an amount equal to the amount by which
the normal value exceeds the export price . . . for the merchandise. . . .

§ 1673.

      (2) Issuance of order; effect of negative determination
. . . .
If . . . such determination[] is negative, the investigation shall be terminated upon
the publication of notice of that negative determination and the administering
authority shall--
      (A) terminate the suspension of liquidation . . . , and
      (B) release any bond or other security, and refund any cash deposit. . . .

§ 1673d(c)(2).

[14] Notably, the facts in *Corus Staal 5AR* are distinguishable. In that case, Commerce
issued its liquidation instructions on April 16, 2007, one week before the *Section 129*

Both sides dispute whether jurisdiction is proper under § 1581(i)(4).  Pl. Br. 4; Def.

Br.10; Def.-Int. Br. 9; Pl. Reply Br. 12-14.  Corus claims that Commerce's liquidation

instructions are unlawful and therefore subject to review under the administration and

enforcement subsection of § 1581(i).  Pl. Br. 4; Pl. Reply Br. 12-14.  Defendants argue, however,

that jurisdiction under § 1581(i)(4) is inappropriate because "a challenge to liquidation

instructions must contend that the liquidation instructions themselves do not accurately reflect

the results of the underlying proceeding."  Def. Br. 11; Def.-Int. Br. 11-13; *see Corus Staal 5AR*,

31 CIT at __, 493 F. Supp. 2d at 1285 (citing *Shinyei Corp.*, 355 F.3d at 1302-03).  As Corus

admits that Commerce's instructions accurately reflect the final results of the first administrative

review, Defendants claim that jurisdiction cannot lie under § 1581(i)(4).  Pl. Br. 12; Def. Br. 11;

Def.-Int. Br. 11.

Although the cited cases in which jurisdiction was proper under § 1581(i)(4) involve

situations where Commerce issued inconsistent instructions with the underlying proceeding,[15]

*see Shinyei Corp.*, 355 F.3d at 1309-10; *Consol. Bearings Co.*, 348 F.3d at 1001-02, there is no

rule precluding review of liquidation instructions that are consistent with the underlying

_____

*Determination* went into effect.  *See Corus Staal 5AR*, 31 CIT at __, 493 F. Supp. 2d at 1286.
The effective date of the *Section 129 Determination* carries legal significance because it
represents the point at which Commerce was bound by the revocation of the *AD Order*.  Prior to
April 23, 2007, there was no legal basis for Corus to aver that Commerce acted outside of its
authority in issuing the liquidation instructions.  *See SKF USA, Inc. v. United States*, 31 CIT __,
__, 491 F. Supp. 2d 1354, 1365 (2007) ("[T]here is no reason to overturn Commerce's zeroing
practice based upon a ruling by the WTO 'unless and until such ruling has been adopted pursuant
to the specified statutory scheme.'") (quoting *Paul Muller Industrie GmbH & Co. v. United
States*, 30 CIT __, __, 435 F. Supp. 2d 1241, 1245 (2006)).

[15]  For purposes of this case, the underlying determination is the final results of the first
administrative review.  *See Final Results*, 69 Fed. Reg. at 33,630.

proceeding, but nonetheless illegal because of an intervening change in the legal landscape. In this case, Corus has initiated a fundamental challenge to Commerce's legal authority to impose antidumping duties following a change in U.S. trade law that extinguished the very basis for imposing those duties. Accordingly, there is a distinct basis for jurisdiction here apart from that recognized in the line of cases that rely on an inconsistency in the underlying determination and the "resulting" liquidation or instructions to confer jurisdiction under § 1581(i)(4).

Jurisdiction lies under § 1581(i)(4) because the question before the court concerns whether Commerce has authority to *enforce* the final determination in the first administrative review. Corus's claim constitutes an "unspecified challenge[] to [the] enforcement of import laws." *Associacao Dos Industriais de Cordoaria E Redes*, 17 CIT at 757, 828 F. Supp. at 983. Corus could not dispute Commerce's authority to issue liquidation instructions in the § 1581(c) proceeding because the *AD Order* was still in effect. *See Corus Staal I*, 29 CIT at __, 387 F. Supp. 2d at 1298; *SKF USA, Inc.*, 31 CIT at __, 491 F. Supp. 2d at 1365. A new cause of action arose under § 1581(i) following revocation of the *AD Order* based upon arguably conflicting authority, namely §§ 1673 and 3538(c). Furthermore, questioning the foundation of Commerce's authority to impose antidumping duties represents a challenge to "tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue." § 1581(i)(2). Therefore, jurisdiction is proper under § 1581(i)(2) as well.

### B. Motion to Dismiss for Failure to State a Claim Upon Which Relief May Be Granted

The Government claims that "Corus has failed to state a claim upon which relief may be granted because its complaint seeks to require Commerce to violate the statute." Def. Br. 12. To survive a motion to dismiss for failure to state a claim, "[f]actual allegations must be enough to

raise a right to relief above the speculative level on the assumption that all the allegations in the

complaint are true even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955,

1959 (2007).  The Government contends that 19 U.S.C. § 1516a "requires that liquidation

instructions reflect the final court decision and does not provide Commerce or [Customs] any

discretion not to liquidate the entries. . . ."  Def. Br. 13; *see* § 1516a.  Thus, "Corus [is] ask[ing]

this [c]ourt to hold that Commerce should have issued liquidation instructions that were <u>not</u> in

accordance with the final court decision."  Def. Br. 14.  Because Corus "acknowledges that the

liquidation instructions are in accordance with the final court decision and with the Secretary's

determination," the Government argues that this contention "highlights Corus's claims as merely

a challenge to the antidumping duty rate assessed in the final results."  Def. Br. 14.

       The Defendants have mischaracterized the nature of Corus's complaint.  Corus asks the

court to examine Commerce's authority to impose antidumping duties following revocation of

the underlying antidumping order.  Therefore, this inquiry concerns whether the guidelines

outlined in § 3538(c) supercede the broad requirements necessary to impose antidumping duties

under § 1673.  The only way the court could "justify abandoning the statutory requirements

regarding liquidation" would be pursuant to an intervening change in law that mandated such a

result.  Def. Br. 14.  Otherwise, Defendants are correct that Commerce is required to issue

instructions that reflect the court's ruling as stated in § 1516a(e).  Since Corus is not attempting

to contravene § 1516a,  Defendants' motion to dismiss is denied.

*C. Preliminary Injunction*

To obtain a preliminary injunction, the petitioner must satisfy four criterion:

"(1) immediate and irreparable injury to the movant [if an injunction is not granted]; (2) the

movant's likelihood of success on the merits; (3) the public interest; and (4) the balance of

hardship on all parties." *U.S. Ass'n of Impts. of Textiles & Apparel v. United States*, 413 F.3d

1344, 1346 (Fed. Cir. 2005) (citing *Zenith Radio Corp. v. United States*, 710 F.2d 806, 809 (Fed.

Cir. 1983)).  "The failure to prove likelihood of success on the merits presents a formidable

obstacle to the granting of an injunction, particularly where the injury factor is weak." *FMC*

*Corp. v. United States*, 3 F.3d 424, 431 (Fed. Cir. 1993).  Indeed, "[a]bsent a showing that a

movant is likely to succeed on the merits,[16] we question whether the movant can ever be entitled

to a preliminary injunction unless some extraordinary injury or strong public interest is also

shown." *Id*. at 427.  In the interest of judicial economy, the court will not address elements (1),

(3), and (4), as they have been thoroughly and clearly discussed in *Corus Staal 5AR*, 31 CIT at

__, 493 F. Supp. 2d at 1281-84, 1286-88.

*(i.) Likelihood of Success on the Merits*

The court again finds that "Corus does not meet even the reduced burden of showing that

i[t] has a fair chance of success on the merits." *Id*. at __, 493 F. Supp. 2d at 1284.

Implementation of the *Section 129 Determination* carries no legal significance with regard to

---

[16] "The CAFC appears to have accepted a sliding scale approach regarding the standard for likelihood of success on the merits: the greater the potential harm to the movant if the court denies injunctive relief, the lesser the burden on the movant to make the required showing of likelihood of success on the merits." *Corus Staal 5AR*, 31 CIT at __ n.10, 493 F. Supp. 2d at 1284 n.10 (citing *Ugine & Alz Belg. v. United States*, 452 F.3d 1289, 1293 (Fed. Cir. 2006)).

Corus's application for a preliminary injunction because § 3538(c) is specific and clearly governs whether the disputed entries are subject to the *AD Order*.

 "Ordinarily, where a specific provision conflicts with a general one, the specific governs." *Edmond v. United States*, 520 U.S. 651, 657 (1997). "[T]he meaning of one statute may be affected by other Acts, particularly where Congress has spoken subsequently and more specifically to the topic at hand." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000). "[A] specific policy embodied in a later federal statute should control our construction of the [earlier] statute, even though it ha[s] not been expressly amended." *Id.* at 143 (quotations & citations omitted) (brackets in original). As a general rule, Commerce cannot impose antidumping duties without a valid determination of dumping. *See* §§ 1673 & 1673d(c); *see also* 19 C.F.R. § 351.212. However, the statute that governs implementation of a WTO panel report explicitly states that revocation of an antidumping order applies prospectively on a date specified by the USTR. *See* § 3538(c); *Section 129 Determination*, 72 Fed. Reg. at 25,261.

 In this case, there existed a valid determination of dumping that was subsequently revoked. *See AD Order*, 66 Fed. Reg. at 59,565; *Section 129 Determination*, 72 Fed. Reg. at 25,261. Taken together, the *Section 129 Determination* and § 3538(c) clearly mandate that HRCS "that are entered, or withdrawn from warehouse, for consumption on or after" April 23, 2007 are not subject to antidumping duties. § 3538(c); *see Section 129 Determination*, 72 Fed. Reg. at 25,261. Since Corus entered the subject HRCS between May 3, 2001 and October 31, 2002, they remain bound by the *AD Order*. *See Statement of Admin. Action* at 1026, *reprinted in* 1994 U.S.C.C.A.N 4040, 4313. It is indisputable that the guidelines for implementing a WTO decision outlined in §§ 3538(c) supercede the broad requirements of § 1673 for imposing

antidumping duties.  *See* §§ 3538(c), 1673, 1673d(c).  Therefore, Corus cannot obtain relief

under the current statutory scheme.

## Conclusion

For the foregoing reasons, Plaintiff's application for a preliminary injunction is denied.


Dated:  September 19, 2007                              /s/Judith M. Barzilay
      New York, NY                                    Judith M. Barzilay, Judge

## NOTICE OF ENTRY AND SERVICE

This is a notice that an order or judgment was entered in the docket of this action, and was served upon the parties on the date shown below.

Service was made by depositing a copy of this order or judgment, together with any papers required by USCIT Rule 79(c), in a securely closed envelope, proper postage attached, in a United States mail receptacle at One Federal Plaza, New York, New York 10278 and addressed to the attorney of record for each party at the address on the official docket in this action, except that service upon the United States was made by personally delivering a copy to the Attorney-In-Charge, International Trade Field Office, Civil Division, United States Department of Justice, 26 Federal Plaza, New York, New York 10278 or to a clerical employee designated, by the Attorney-In-Charge in a writing filed with the clerk of the court.

or

Service was made electronically, by the Court's CM/ECF system, upon those parties that have filed a Notice of Consent to Electronic Service.

Tina Potuto Kimble
Clerk of the Court

Date: _____     By: _____
                                                      Deputy Clerk